[Crim. No. 2222. Second Appellate District, Division Two.—April 4, 1933.]

THE PEOPLE, Respondent, v. ALPHONSO RUBAL, Appellant.

Frederick H. Vercoe for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton for Respondent.

ARCHBALD, J., *pro tem.*—Defendant was tried before the court, a jury having been waived, and convicted of the crime of burglary. From the judgment of conviction and from the order denying his motion for a new trial he has appealed.

The sole contention made by appellant for a reversal relates to the alleged insufficiency of the evidence to sustain the judgment and order.

The evidence shows without question that on the night of September 8, 1931, a cleaning and dyeing establishment located at 5006 Avalon Boulevard, Los Angeles, was burglarized. A. L. Irwin, a motor coach driver for the Los Angeles Railway Company, testified that he passed such establishment at about 4:55 A. M. of September 9th and saw a Hudson coach parked on 50th Street, facing Avalon, back of the alley which ran through the block behind the dye-works, and that he saw a young man crossing the vacant lot between 50th Street and the dye-works, coming from toward the front entrance of the place and proceeding in the direction of the Hudson coach; that the latter stepped into the street on the way toward the Hudson but before he reached it someone at the front of the dye-works "hollered", and that the young man and this other party conversed together but that the witness did not understand what they said; that the young man got into the Hudson, started the motor and drove out into Avalon Boulevard toward 51st Street and, turning around about the center of the block, drove back and parked in front of the dye-works, where he turned his lights on for the first time; that he, the witness, went on to 49th Street to catch a car; that he missed his car and that while he was waiting a man named Rumford

drove along and picked him up; that they turned east on 49th Street to McKinley Avenue and then south on McKinley, and that just before they reached 50th Street the Hudson coach "pulled off on McKinley, and turned up the street, going south in front of us"; that he copied the license number of the Hudson and that it was either "1N–4908" or "1N–4989"; that he was not sure whether the next to the last number was an "0" or an "8"; that there were two persons in the car; that the Hudson was a black or dark-colored machine. The witness Rumford testified that he was driving west on 50th Street and made the boulevard stop at Avalon; that he saw two men, one taller than the other, crossing the lot by the side of the dye-works; that the shorter one had his arms full of clothes; that the man with the clothes went to the Hudson car, but apparently saw Rumford and went on by it, while the other one got in; that the witness turned right on Avalon and proceeded to 49th Street, where he picked up Irwin and then turned to 'the right into 49th Street to McKinley, turned to the right south on McKinley, "and I went—it must have been half way of the block, and this Hudson car turned right to the right, going in the same direction I was, ahead of me"; that the same two men were in it; and that while he could not identify the defendant, he was about the size of the man with the clothes.

W. L. Owen testified that on or about July 30, 1931, he sold defendant a dark blue and black Hudson coach, with state license No. 1N–4909; that on or about September 14th of that year defendant made a payment on the car and drove it on to "the lot". Police Officer Stanger testified that he and Officer Beard stepped on to the lot and went toward the Hudson coach that same day, while defendant was observing a mechanic working on it; that as they entered the lot defendant started toward the rear of the premises and walked around behind the office, between it and a fence that was approximately five feet to the rear of it; that the witness walked around the office in the other direction and headed him off; that he asked defendant where he was going, to which the latter replied, "To the toilet." Officer Beard came in behind defendant and asked him his name, to which he replied, "Alphonso Rubal", and in response to their query he stated that the Hudson coach was his.

Stanger showed defendant his badge and told him he was under arrest. Defendant was then asked if he was out at the dye-works the night of the burglary, to which he said, "No." The officers then took him back to the Hudson coach and Officer Beard left to get their car. While talking to the mechanic working on defendant's car, according to Stanger's testimony, Rubal suddenly "jumped and ran through this small space between the front end of the other car and the wall and headed east toward Seventh street". Stanger said, "Stop", but defendant kept running, whereupon the former drew his gun and fired one shot, missing defendant; the latter crossed Seventh Street and went west to San Pedro Street, crossed that thoroughfare through the traffic, proceeded across a vacant lot and into the next street. The last the witness Stanger saw of him he was going over a shed roof and up around the corner of a brick building, at which time Stanger fired another shot at him as he disappeared around the corner. The testimony of the officer as to the flight is corroborated by his companion, Beard, as well as by the mechanic and Owen. It also appears that when the Hudson coach was driven on the lot by defendant the front license plate was No. 1N–4909 and the one on the rear was "St6896", and that the license plate corresponding with that on the front was found inside the car.

There is no direct identification of appellant as one of the men participating in the burglary. The evidence does show that one of the men seen carrying clothes from the dye-works was of the approximate build and height of appellant, and the identity of appellant's car with the one used would seem to be satisfactorily established. Furthermore, appellant's actions when told that he was under arrest, the questioning having indicated that it was because of participation in the burglary in question, would seem to indicate guilt. The effect of this evidence and the weight to be given it was a matter for the determination of the trial judge (sec. 1127c, Pen. Code), and in conjunction with other circumstances connecting appellant with the crime charged, it makes a chain of evidence so strong that we cannot say it is "made clearly apparent that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the court below" (*People* v. *Tom*

*Woo,* 181 Cal. 315, 326 [184 Pac. 389, 393]), which seems to be the test to be applied before a verdict is set aside. In this case the court considered the evidence once more, upon the motion for new trial, and having observed the witnesses personally we think his determination should not be disturbed, as there would seem to be sufficient facts before the court to justify the inference of guilt. (*People* v. *Hennessey,* 201 Cal. 568 [258 Pac. 49].)

Judgment and order affirmed.

Craig, Acting P. J., and Stephens, J., concurred.